PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 20-3307 and 21-1262
_____

SRECKO PESIKAN,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(BIA 1:A075-161-152)
Immigration Judge: Kuyomars Q. Golparvar
_____

Argued on June 27, 2023

Before: JORDAN, KRAUSE, and MONTGOMERY-
REEVES, *Circuit Judges*

(Filed: September 26, 2023)
_____

Stephen A. Fogdall   [ARGUED]
Dilworth Paxson
1500 Market Street
Suite 3500E
Philadelphia, PA  19102

Arleigh P. Helfer, III
Helfer Law
410 Campbell Avenue
Havertown, PA  19083

Bruce P. Merenstein
Welsh & Recker
306 Walnut Street
Philadelphia, PA  19106
        *Counsel for Petitioner*

Alexander J. Lutz   [ARGUED]
Craig A. Newwell, Jr.
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC   20044
        *Counsel for Respondent*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Petitioner Srecko Pesikan argues that the Board of Immigration Appeals ("BIA") erred in concluding that his 2018 Pennsylvania conviction for driving under the influence ("DUI") of marijuana constituted an offense involving a "controlled substance," as defined in the federal Controlled Substances Act ("CSA"), thereby rendering him removable under the Immigration and Nationality Act of 1952, 8 U.S.C. § 1227(a) ("INA").  We agree and will grant his petition for review.

I. **BACKGROUND** [1]

Pesikan is a citizen of Bosnia and Herzegovina ("Bosnia").  In 1992, when he was six years old, he, along with his mother and sister, fled Bosnia when war broke out there.  In 1998, they entered the United States as refugees and gained lawful permanent resident ("LPR") status.

In June 2017, Pesikan caused a car accident while under the influence of drugs and alcohol.  Eyewitnesses reported that he was swerving side-to-side across multiple lanes until he crashed into a center divider on a highway, at which point he

---

[1] This appeal comprises two consolidated Petitions for Review, case numbers 20-3307 and 21-1262, but Pesikan has elected "not [to] pursue [the 20-3307] appeal here." (Opening Br. at 2-3 n.1.)  Accordingly, Pesikan has waived his arguments in case number 20-3307.

and his female passenger left the scene.[2]  A responding police officer found a half-consumed bottle of whiskey on the driver's seat and marijuana in the driver's door pocket.  A blood test of Pesikan revealed the presence of cocaine, marijuana, alprazolam, and a blood alcohol content of .054.

In 2018, Pesikan was convicted in the Court of Common Pleas of six counts of driving under the influence in violation of 75 Pa. Cons. Stat. § 3802.[3]  At the time of

---

[2] Pesikan testified at his removal hearing that the crash was caused by his car's axle breaking.  He also testified that, contrary to the police report, he did not flee the scene, but had instead walked about one hundred feet away from his car to "avoid getting hit by the car[s] driving by."  (A.R. at 174.)

[3] Count 1 was for "imbibing a sufficient amount of alcohol such that the actor was rendered incapable of driving safely" in violation of 75 Pa. Cons. Stat. § 3802(a)(1); Count 2 was for driving under the influence of a "Schedule I controlled substance, Namely: Marijuana" in violation of § 3802(d)(1)(i); Count 3 was for driving under the influence of a "Schedule II or Schedule III controlled substance, namely, cocaine" in violation of § 3802(d)(1)(ii); Count 4 was for driving while under the influence of "a Metabolite of a [Schedule I, Schedule II, or Schedule III controlled] substance, namely, benzoylecgonine and/or marijuana" in violation of § 3802(d)(1)(iii); Count 5 was for driving "while under the influence of a drug or combination of drugs, namely, alprazolam (schedule IV), to a degree which impaired the actor's ability to drive safely" in violation of § 3802(d)(2); and Count 6 was for driving "while under the combined influence of alcohol and a drug or combination of drugs to a degree

---

Pesikan's conviction, Pennsylvania's DUI statute read, in relevant part:

> (d) Controlled Substances. – An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> (1) There is in the individual's blood any amount of a:
>
>> (i) Schedule I controlled substance, as defined in … [Pennsylvania's controlled substance schedules];
>>
>> (ii) Schedule II or Schedule III controlled substance, as defined in [Pennsylvania's controlled substance schedules], which has not been medically prescribed for the individual; or
>>
>> (iii) metabolite of a substance under subparagraph (i) or (ii).
>
> (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

which impaired the actor's ability to drive safely" in violation of § 3802(d)(3).  (A.R at 838, 840.)

(3) The individual is under the combined influence of alcohol and a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa. Cons. Stat. § 3802(d).

The trial court merged all of the DUI counts into Count 2 – for driving while under the influence of marijuana in violation of § 3802(d)(1)(i) – and sentenced Pesikan to 60 days to six months' imprisonment, a $1,000 fine, participation in an alcohol highway safety school, and, depending on a future evaluation, participation in additional alcohol-related treatment.[4]

---

[4] The Superior Court of Pennsylvania has "held that a defendant should not be subjected to separate sentences for multiple convictions arising under Section 3802(d)(1)" because "Section 3802(d)(1) proscribes a single harm to the Commonwealth[.]" *Commonwealth v. Westlake*, 295 A.3d 1281, 1289 (Pa. Super. Ct. 2023) (quoting *Commonwealth v. Given*, 244 A.3d 508, 512 (Pa. Super. Ct. 2020)). Accordingly, trial courts are to merge a defendant's "DUI convictions [under Section 3802(d)(1)] for purposes of sentencing." *Id.* The trial court here merged not only the § 3802(d)(1) counts, Counts 2-4, but also Pesikan's violations of § 3802(a)(1), § 3802(d)(2), and § 3802(d)(3) – Counts 1, 5, and 6, respectively. In addressing an earlier version of Pennsylvania's DUI statute, the Supreme Court of Pennsylvania suggested that all DUI violations should merge when it explained that "the driving

6

In November 2019, the Department of Homeland Security ("DHS") charged Pesikan with removability as an alien convicted of violating a law relating to a controlled substance under 8 U.S.C. § 1227(a)(2)(B)(i), which asks whether a noncitizen "has been convicted of a violation of … any law … relating to a [federally] controlled substance."

Pesikan moved to terminate his charge of removability.[5] He admitted that, pursuant to Pennsylvania law, he had been convicted of driving under the influence, but he argued that, with application of the categorical approach to comparing state and federal crimes, his conviction could not be considered an offense "relating to a controlled substance" under § 102 of the CSA. In particular, he asserted that Pennsylvania's DUI statute

under the influence statute proscribes a single harm to the Commonwealth-the operation of a vehicle under the influence to a degree that renders an individual incapable of safe driving." *Commonwealth v. McCurdy*, 735 A.2d 681, 685-86 (Pa. 1999). Finally, we note that, although not at issue here, Pesikan was also convicted of possession for personal use of marijuana in violation of 35 Pa. Cons. Stat. § 780-113, and he was sentenced to 15 days' probation on that count.

[5] Pesikan also filed an application for asylum, withholding of removal, and, pursuant to the Convention Against Torture, deferral of removal. The Immigration Judge and BIA denied those claims. This opinion does not address the rulings as to those claims because we will grant Pesikan's Petition for Review based on his underlying motion to terminate his charge of removability.

is broader than the CSA because the former allows for convictions based on the use of substances that are not federally controlled.

The Immigration Judge ("IJ"), after deciding that the Pennsylvania DUI statute is divisible, applied the modified categorical approach, determined that the pertinent DUI provision categorically matches 8 U.S.C. § 1227(a)(2)(B)(i), and denied Pesikan's motion to terminate.[6] Pesikan timely appealed the IJ's decision to the BIA, and the BIA affirmed the IJ's ruling – for the same reasons articulated by the IJ – and dismissed Pesikan's appeal. Pesikan then timely petitioned us for review of the BIA's decision.

## II. DISCUSSION[7]

The parties agree that Pesikan's state DUI conviction must be analyzed under some version of the categorical approach to determine whether it constitutes an offense relating to a "controlled substance" under the CSA, thereby triggering his removability under the INA. *See Mellouli v. Lynch*, 575 U.S. 798, 804 (2015) ("[I]n determining … whether

---

[6] The IJ sustained the charge of removability based on the 75 Pa. Cons. Stat. § 3802(d)(1)(i) marijuana DUI conviction.

[7] We have jurisdiction over this petition for review under 8 U.S.C. § 1252. We review the BIA's legal conclusions de novo. *Hillocks v. Att'y Gen.*, 934 F.3d 332, 337-38 (3d Cir. 2019). We "consider the opinion of the IJ only insofar as the BIA deferred to it." *Singh v. Att'y Gen.*, 839 F.3d 273, 282 (3d Cir. 2016) (quotation omitted).

8

a state conviction renders an alien removable under the immigration statute[,]" courts apply "the categorical approach.").

"Because Congress predicated deportation on convictions, not conduct, the [categorical] approach looks to the statutory definition of the offense of conviction, not to the particulars of an alien's behavior." *Id.* at 805 (quotation omitted). Accordingly, courts may not examine the facts underlying the crime. *Id.* at 805-06 (quotation omitted). Instead, "the adjudicator must presume that the conviction rested upon nothing more than the least of the acts criminalized under the same statute." *Id.* at 805. The state conviction will then trigger removal only if it is a categorical match for the federal offense, i.e., contains all the elements of a removable offense "defined by federal law." *Id.*

When, however, a statute of conviction is divisible – that is, it embodies definitions of more than one crime and is thus susceptible to being analytically divided into those separate definitions – a court may apply the "modified categorical approach," which allows examination of certain documents in the record of conviction to determine which of the different crimes in the statute the alien was convicted of committing. *Descamps v. United States*, 570 U.S. 254, 257 (2013). Those documents include "the charging document and jury instructions, or in the case of a guilty plea, the plea agreement, plea colloquy, or some comparable judicial record of the factual basis of the plea." *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (quotation omitted). Again, a statute is divisible if it defines "multiple crimes" by "list[ing] elements in the alternative," whether in the disjunctive or in separate subsections. *Mathis v. United States*, 579 U.S. 500, 505

(2016); *see also Descamps*, 570 U.S. at 257 (explaining that a divisible "statute sets out one or more elements of the offense in the alternative – for example, stating that burglary involves entry into a building *or* an automobile").

As the foregoing indicates, it is important to determine whether a statute merely sets forth multiple means of accomplishing a single offense and is thus indivisible, or instead sets forth different crimes, with their different elements, and so is divisible.  In answering the "means-or-elements" question, we will defer to an "authoritative source of state law," such as a holding from the state's highest court, and will consider a decision from a lower court of the state as a significant "datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."  *Singh v. Att'y Gen.*, 839 F.3d 273, 283 & n. 5 (3d Cir. 2016) (quotation omitted).

The parties agree that the substances listed on Schedule I of Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act include substances beyond those listed in the federal CSA.  *See Hillocks v. Att'y Gen.*, 934 F.3d 332, 340 (3d Cir. 2019) ("[The] Pennsylvania controlled substance list incorporates several drugs that are not on the federal list."); *see also* (Answering Br. at 23 ("There is no dispute that § 3802(d)(1)(i) overbroadly incorporates some Pennsylvania Schedule I substances that are not federally controlled[.]")).  In other words, a conviction under Pennsylvania's DUI statute is not a categorical match for the federal offenses set out in the CSA.  Pesikan therefore cannot be removed under the INA as someone who has committed a federal controlled substance offense unless the Pennsylvania DUI statute is divisible and,

10

consequently, the strictures of the categorical approach give way to the broader review allowed by the modified categorical approach, in which case some inquiry into the underlying facts of Pesikan's DUI conviction is permitted.[8]

We conclude that the pertinent Pennsylvania statute, 75 Pa. Cons. Stat. § 3802(d)(1)(i), is best read as being indivisible. Instead of "list[ing] multiple elements disjunctively," as is the hallmark of a divisible statutory provision, § 3802(d)(1)(i) incorporates an "itemize[d]" list of "diverse means" by which an individual might violate the law by having a Schedule I controlled substance in his blood. *See Mathis*, 579 U.S. at 506. This is evident from the fact that a jury could have convicted Pesikan under § 3802(d)(1)(i) even if the jurors disagreed about which particular controlled substance was in his blood. If, for example, some jurors had determined that Pesikan was under the influence of only cocaine while others concluded that he was under the influence of only marijuana, he would still have committed the crime set forth in § 3802(d)(1)(i), "so long as all agreed that the defendant" was under the influence of any Schedule I controlled substance.[9] *Id*.

---

[8] The government acknowledges that, "[u]nder the default categorical approach, the presence in Pennsylvania's Schedule I of some substances that are not federally controlled would render § 3802(d)(1)(i) overbroad with respect to 8 U.S.C. § 1227(a)(2)(B)(i), meaning that no conviction under that statute could support that charge of removability." (Answering Br. at 28.)

[9] The Supreme Court described a similarly indivisible statute in the following hypothetical:

11

Our reading of § 3802(d)(1)(i) is consistent with caselaw from the Superior Court of Pennsylvania, which teaches that convictions arising under § 3802(d)(1) should be merged at sentencing. In *Commonwealth v. Given*, the Superior Court held that the merger of sentences under § 3802(d)(1) is proper because that provision "proscribes a single harm to the Commonwealth – DUI-Controlled Substance." 244 A.3d 508, 512 (Pa. Super. Ct. 2020). The court reasoned that "Subsections 3802(d)(1)(i) and (iii) provide alternate means by which the Commonwealth can establish the offense, but do not provide proof of different offenses." *Id.*; *see also Commonwealth v. Westlake*, 295 A.3d 1281, 1289 (Pa. Super. Ct. 2023) (DUI convictions for "both cocaine and Benzoylecgonine, the metabolite of cocaine[,]" should merge at sentencing); *Commonwealth v. Powell*, 2013 WL 11256850

> [S]uppose a statute requires use of a "deadly weapon" as an element of a crime and further provides that the use of a "knife, gun, bat, or similar weapon" would all qualify. Because that kind of list merely specifies diverse means of satisfying a single element of a single crime – or otherwise said, spells out various factual ways of committing some component of the offense – a jury need not find (or a defendant admit) any particular item: A jury could convict even if some jurors concluded that the defendant used a knife while others concluded he used a gun, so long as all agreed that the defendant used a deadly weapon.

*Mathis*, 579 U.S. at 506 (citations omitted).

12

at *4 (Pa. Super. Ct. July 24, 2013) (DUI convictions for multiple drugs should merge at sentencing).

Because Pennsylvania state convictions merge only if "the statutory elements of one offense are included in the statutory elements of the other offense," *Commonwealth v. Kemp*, 2017 WL 657764 at *7 (Pa. Super. Ct. Feb. 17, 2017) (citing 42 Pa. Cons Stat. § 9765), it follows that any two violations of § 3802(d)(1), including § 3802(d)(1)(i), result from the defendant having twice satisfied the same elements of the crime, albeit, perhaps, by diverse means.

In light of Pennsylvania caselaw and our own statutory interpretation of § 3802(d)(1)(i), the reasoning articulated by the BIA for upholding Pesikan's removability, and the government's additional arguments on appeal, are unavailing. The BIA concluded that the statute was divisible "as to the identity of the controlled substance involved" based on two considerations. (App. at 6-7.) It first looked to the Pennsylvania Suggested Standard Jury Instructions for DUI offenses, which ask the Commonwealth to identify the controlled substance at issue.[10] In pertinent part, the suggested instruction provides:

> To find the defendant guilty of driving under the influence of controlled substances, you must be satisfied that the following two elements have been proven beyond a reasonable doubt:

---

[10] The government echoes the BIA's contention regarding jury instructions: "Pennsylvania model jury instructions require that the specific substance be identified[.]" (Answering Br. at 21.)

13

*First*, that the defendant drove, operated, or was in actual physical control of the movement of a vehicle upon a highway or trafficway.

*Second*, that at the time the defendant drove, operated, or was in actual physical control of the vehicle, the defendant's blood contained any amount of [a Schedule I, II, or III controlled substance.] I hereby instruct you that [*name of drug*] is a [Schedule I, II, or III controlled substance.]

Pennsylvania Suggested Standard Criminal Jury Instructions 17.3802(d)(1) (2016). Based on that instruction, the BIA determined that "the State must prove the substance involved in the offense to obtain a conviction for driving under the influence of [sic] controlled substance … such that it is an element of the offense[.]" (A.R. at 5.)

The BIA's reliance on that suggested jury instruction is misplaced. For one thing, the Pennsylvania Supreme Court has held, at least in the civil context, that the form instructions are not binding law. *Cowher v. Kodali*, 283 A.3d 794, 808 (Pa. 2022) ("Defendants' reliance on Pennsylvania's Suggested Standard Civil Jury Instructions is misplaced. The suggested instructions are not binding. Rather, as their title suggests, the instructions are guides only.") (cleaned up). There is no reason to believe that the instructions are any more binding in the criminal context than they are in the civil.[11] And, of course,

---

[11] The government cited our opinion in *Larios v. Attorney General*, 978 F.3d 62, 68-69 (3d Cir. 2020), for the

14

the focus at step one of the divisibility analysis is on the text of the statute itself. *See Mathis*, 579 U.S. at 505 ("[The Supreme] Court [has] approved the 'modified categorical approach' for use with *statutes* having multiple alternative elements.") (emphasis added); *id.* at 505-06 (explaining that a court, *after* finding that a statute is divisible, may look "to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of").

In further support of its ruling, the BIA cited our decision in *Singh v. Attorney General*, which held that a Pennsylvania statute criminalizing possession of a controlled substance with intent to manufacture or deliver, 35 Pa. Cons. Stat. § 780-113(a)(30), was divisible by the identity of the substance. 839 F.3d at 284. While the BIA acknowledged that our opinion in *Singh* addressed "another Pennsylvania controlled substance offense[,]" (App. at 5), the government broadly construes *Singh* as establishing that "incorporation of Pennsylvania's controlled substance schedules creates multiple separate offenses rather than inconsequentially illustrating various means of committing a single, unified offense[.]" (Answering Br. at 29.)

---

proposition that "[m]odel jury instructions and charges, too, can illuminate which terms in a statute are elements that must be charged by a prosecutor and either found by a jury or admitted in a plea." (Answering Br. at 27.) But we explicitly stated that we were basing our decision in that case on an "authoritative source in a New Jersey Superior Court decision." *Larios*, 978 F.3d at 68.

That is plainly wrong. We held in *Singh* that a particular statute, 35 Pa. Con Stat. § 780-113(a)(30), was divisible because the Pennsylvania Superior Court had previously so held and because, under that statute, the penalty fluctuates depending on the identity of the controlled substance at issue. *Singh*, 839 F.3d at 283-84. We did not hold that *all* Pennsylvania statutes incorporating Pennsylvania's controlled substance schedules are divisible. Moreover, neither of the two bases for our decision in *Singh* are present here: the parties have not identified a Pennsylvania state court decision conducting a divisibility analysis of the DUI statute,[12] and the DUI statute's penalty does not vary depending on the identity of the controlled substance at issue.

The government, in addition to echoing the BIA's rationales, makes two additional arguments. First, it points to the Pennsylvania Superior Court's opinion in *Commonwealth v. Swavely*, 554 A.2d 946 (Pa. Super. Ct. 1989) – the case on which we relied to reach our holding in *Singh* – as an authoritative source of state law "indicat[ing] that each Schedule I controlled substance incorporated into [the DUI statute] creates a separate crime such that the statute is divisible by the identity of the specific substance charged." (Answering Br. at 28-29.) Specifically, the government asserts that *Swavely*'s holding that 35 Pa. Cons. Stat. § 780-113(a)(30) contains alternative elements, "*i.e.*[,] the particular controlled

---

[12] Indeed, as already noted, Superior Court case law indicates that the statute is indivisible, given the application of the merger-of-sentences doctrine in cases involving 75 Pa. Cons. Stat. § 3802(d)(1). *See, e.g.*,. *Westlake*, 295 A.3d at 1289; *Given*, 244 A.3d at 512; *Powell*, 2013 WL 11256850 at *4 (Pa. Super. Ct. 2013).

16

substance[s]," 554 A.2d at 949, was based "not only on [35 Pa. Cons Stat.] § 780-113(f)'s punishment provisions[,] but on the structure of state controlled substance schedules themselves[.]" (Answering Br. at 30.)

The government fails to mention, however, that *Swavely* expressly grounded its holding on the fact that the Pennsylvania legislature, "[r]ecognizing that there are significant differences between controlled substances, … authorized punishments [in § 780-113(f)] which correspond with the relative threat to the community posed by an unauthorized possession, use, or transfer of the controlled substance involved." 554 A.2d at 950. That language shows that *Swavely* relied on the punishment provisions in § 780-113(f) – provisions for which there are no analogues in the present case – in reaching its means-or-elements determination.

Second, the government contends that because Pesikan's bill of information charged him with driving under the influence of marijuana, the identity of the controlled substance as marijuana was necessarily an element of his offense. That argument conflates the categorical approach's divisibility analysis with the permitted scope of the government's evidence. While the government correctly notes that the scope of its proof on Count 2 was limited to showing that some amount of marijuana – as opposed to some other controlled substance – was present in Pesikan's blood, the government-drafted charging instrument cannot add to or subtract from the elements of a statutory crime. *See United States v. Tucker*, 703 F.3d 205, 215-16 (3d Cir. 2012) ("In criminal trials the proof offered by the Commonwealth must measure up to the charge made in the indictment.") (quotation

17

omitted); *id.* at 215 (explaining that because the defendant "was specifically charged with [possession with intent to distribute cocaine], the trial judge was [required] to find that [he] possessed cocaine in order to convict").

In sum, because the identity of the specific controlled substance is not an element of the Pennsylvania DUI statute, the state statute of conviction is indivisible and cannot serve as the basis for Pesikan's removal under the INA.

### III. CONCLUSION

For the foregoing reasons, we will grant Pesikan's Petition for Review in case number 21-1262 and will reverse the order for removal. We will dismiss Pesikan's Petition for Review in case number 20-3307.

18